Good morning. Brendan Philbin on behalf of the appellant, Dr. Eric Cuban. And I'd just like to ask to reserve three minutes in rebuttal. And may it please the court, in February of 2024, Dr. Eric Cuban exercised that sacred right that we hold as Americans by participating in a representative government by advocating for legislation under consideration at the Wyoming House of Representatives. For doing so, Governor Gordon removed Dr. Cuban from the Wyoming Medical Board in violation of his First Amendment rights. In analyzing this case, the district court erred in two specific areas. First, Dr. Cuban's email was on a matter of public concern, specifically the debate in the Wyoming legislature about Cloey's Law. Secondly, the district court conducted the Pickering balancing test prematurely and found, without evidence and based on pure speculation, that Dr. Cuban's email would disrupt operation of the medical board. Counsel, on your first point about a matter of public concern, in our mixed speech cases, what would you say is a discernible line between how much of the speech can be about a matter that may be a public concern versus a private grievance? Thank you, Your Honor. I would point this court to Moore v. Wynwood, where in that case, the speaker, while holding some personal animus towards a fellow officer, used that as to provide perspective to the debate in that case that was in front of city council regarding a police-involved shooting. And so here, and what the court failed to do is to consider the context of Dr. Cuban's speech. And to provide this court with that context, the Wyoming Medical Society advocates and lobbies for physicians in the state of Wyoming. So the Wyoming legislature typically hears from them on all sorts of bills that are in front of them. And because they were not hearing from what the Wyoming Medical Society purported to do, is to represent all doctors, Dr. Cuban felt the need to advocate in his own behalf, which is the quote he used in the email. And advocacy generally entails talking about your opponent, maybe poking holes in their argument, highlighting their weaknesses and biases. So if we take the whole email that Dr. Cuban wrote, first he's explaining to the legislature why the opposing position is wrong, because it was biased and infected with some political ideological concerns. And if we take the whole email and we look at it, we can see he provides specific examples of why he believes the bill is a good bill and why it should pass, mainly on Appellate 31, the last half of that. And after he sets up his opponent, he says, I feel the need to advocate on my own behalf by coming to you directly with this information. So he was not airing personal grievance or an employment context like in Connick and other cases like McAvoy in the circuit. He was advocating. And part of advocating is talking about your opponent and why they're wrong and why they're weak. Ultimately, sorry, I apologize. Ultimately, his grievance seemed to be what was going on on the inside of the medical association, right? I mean, what was happening there and how they came to make or take a position on Chloe's law. And he was very unhappy with the position taken and he was unhappy with leadership for taking that position. That seems clear from his email. But why is it ever a matter of public concern when members, because essentially he's speaking as a member of this association now, I mean, he's a private citizen, but he's saying I have this information because I'm a member of this professional association. And I don't like what is happening in this association or how they made their recommendation. And I understand he's concerned about that. But what makes that a matter of public concern any more than any membership in any professional association, which I don't think there is an association out there in any profession where there isn't strong feelings about positions taken by the association and yet it happens. There's angry members and yet it happens. But why does that, why is that internal dispute, which is understandable and happens and he has a right to be unhappy about it, but why is that a matter of public concern? Because it is relevant to the advocacy and the debate because the Wyoming Medical Society is purporting to represent physicians in Wyoming that are members. And they have a right to do that. And they do. Right. The members have given him that right. Right. And however, if members do not feel that they are being advocated for properly, they should feel free. Absolutely. They're free to go forward. To go and speak. Right. And that's what he's done. Yes. But that doesn't make his concern about what's happening within the membership or how the membership arrived at its position that it took a matter of public concern. Do you see what I'm saying? Because that's what you're saying is the matter of public concern. That everybody out there needs to know how this association arrived at it and that there's members that don't agree. Which would be every case ever in a professional association that's providing information or a recommendation to a legislative body. There would be members who don't agree. You're right. Your Honor, it's our position that Dr. Cuban spoke on a matter of public concern. And that public concern was the debate surrounding Chloe's Law. And I fear that... Okay. I'm misunderstanding then. Because I thought he was trying to advise the legislature that they should be concerned about the Medical Association's recommendation and the basis for it. No, Your Honor. The purpose of his email, taken in the whole, I would point to Appellate Record 31. From the perspective of a Wyoming doctor who practices medicine at the hospital he was born, I can tell you that this is a very good bill. I want to advocate on my own behalf for this bill. That's part of it. That's part of it. And the paragraph talks about why he feels it is a good bill and should be passed. That's part of it. And in doing so, he is adding context and speaking about the other side. And I fear that if we read this email too narrowly... Well, when he speaks about the other side, he's talking about his concerns about his organization, his private organization that he's in. And the opinions that they hold, which are opposite to his. Right. And I fear that if we read this email too narrowly, then we will chill the First Amendment ability in a way that dictates how people can advocate. Because if we say that you can't talk about your opponent and their position... He's welcome. He can talk about it. That's not our issue right now. The issue is whether this is a matter of what he was talking about. Or purely his private interest or matters of public concern. Dr. Kuba, it's... And what part of it, what part of his email makes it a matter of public concern? My understanding was you were suggesting it was the part where he discusses the association. No, the public concern in his email is advocating for the passage of Chloe's Law. Which the bulk of that advocacy occurs in the final five paragraphs of his email on Appellate Record 31. He's arguing the merits of the bill and why it should pass. And that is the public concern. That's his private view about the bill is what you're saying? Yes. Yes, Your Honor. He is speaking in his private capacity. Not as a member of a board. He sent this from his personal email. Board members have no reason to communicate with the Wyoming House of Representatives. And he says I'm writing as a prospector of a Wyoming doctor. He says he's concerned that the Wyoming Medical Society's inaccurate statements to the state's lawmaking body could impact all Wyomingites. I don't know if I said that right. So to me, it's pretty clear that what he's complaining about is the internal working of the society. And the question is, is that a matter of public concern? I respectfully disagree with the reading of that. His purpose in writing that statement is to try to cut down the weight that the Wyoming Medical Society holds in this public debate on this legislation. Because the Wyoming Medical Society, again, purports to speak for the doctors of Wyoming. Again, it's your suggestion. You would be saying that's a question of fact as to what that meant is what you're saying, right? Yes. That we can't be deciding at this point. Yes. I assume that's your position. Yes. It certainly could be taken a different way. You would agree? Yes. Yeah. Counsel, can I ask you, is the preliminary injunction denial now moot because final judgment has been entered? Yes. It's moot. We concede that point.  If I may move to discuss the third prong of that Pickering balancing test, where the government's right to speak, or the government's interest in efficient operations is balanced against the public employee's right to speak. And it's because that has to be shown with evidence and not pure speculation. And it's because of that evidentiary standard that Your Honor wrote last January in Brown v. City of Tulsa that the application of the Pickering balancing test will be possible only after the parties have had an opportunity to conduct some discovery. So the district court here, like the district court in Brown, in granting here the motion on the pleadings and there the And the results of that lay bare. The speculation about the impact of this on the board starts at the genesis of this case. If you read the governor's letter on Appellant 33, I believe your comments on the particular legislation could give doctors a reason to believe that there's bias. So that speculative language has persisted to this very moment. And the state and the governor has not provided any evidence to support that speculation that he opened this matter with. And I note that I'm going into my rebuttal time, so sit down. Thanks. Thank you, Counsel. May I please the court? Counsel, my name is Jim Peters and I'm here today on behalf of Governor Mark Gordon in this matter. This case involves the governor's authority to remove a licensing board member. When the governor determines that statements that that particular member has made can compromise that member's ability to perform his duties on that particular licensing board without the appearance of bias. And I'd like to focus first off on the third element of the Garcetti Pickering test. And that's whether the government's interests as an employer outweigh the employee's free speech rights. So looking at this case, it's whether the government had an adequate justification for treating the employee differently than other members of the public. So we look at whether statements made by particular members would impede their ability to perform their duties or interfere with the operations of the agency. What we have here is a state's interest asserted by the governor. That interest is ensuring that licensing board members in Wyoming, in particular on the Board of Medicine, are able to perform their duties without the appearance of bias. Counsel, can I stop you though and ask you, isn't the real question before us the procedural sequence of this Pickering balancing as in when it's employed? As counsel noted, this court has said at the motion for either 12B-6 or judgment on the pleadings here, that it's generally improper to do Pickering balancing because to do that balance you need evidence. And you may have that evidence and it may be marshaled at some date before the district court, but why should we deviate from our precedent to say in this case that Pickering balancing was appropriate at this stage of the procedural history of the case? Your Honor, in Moore, this court said that we need not justify predictions with formal evidence here showing, and we do have that evidence in this case, Your Honor. It's the email from Dr. Cuban. What we have is an email from a member of the Board of Medicine who was sent, but the email was sent in his individual capacity that is criticizing the leadership of the Wyoming Medical Society, a specific doctor, and it can even be interpreted further to be criticizing any member on the left side of the partisan divide. Really that email contains charged allegations that not only that the medical society had a position that was contrary to Dr. Cuban, but it contained allegations that the leadership, and Dr. Sanderson specifically, ignored and suppressed evidence and information when presenting its position to the Wyoming legislature. But, Counsel, Pickering balancing, as the second word implies, is a balance between competing interests. So in referencing the email that Dr. Cuban sent, it may be then that's a value to determine what his individual rights are and to engage in that speech, but also it could form the basis for the other side of the scale, which is disruption. And that's the part where typically it's difficult for court to assess until there is, again, a marshalling of evidence. And when I look at this case, as I understand it, the plaintiff's attached to the complaint, both the email and the letter from the governor, so that is fair game for us to consider. Is Governor Gordon's email response enough evidence for us to look at a Pickering balancing in terms of weighing what the disruption could be based upon that email that he sent? Your Honor, I believe that it is, and I believe the district court correctly looked at the complaint and those documents attached to his complaint when it conducted this balancing test. And it looked at, as it relates to the governor's interest and the state's interest as a whole, is looking at the text of that email and those politically charged allegations against leadership and specific members, whether it was reasonable, whether there was a reasonable prediction that Dr. Cuban could not be impartial in certain matters that would appear before the Board of Medicine. Specifically, the Board of Medicine is charged with regulating the practice of medicine in Wyoming, and that includes adopting rules to implement the practice, issuing advisory opinions, and very importantly, issuing licenses, investigation, and possibly taking disciplinary action against licensees who may come before that. The leadership of the Wyoming Board of Medicine, or sorry, the Wyoming Medical Society, are practitioners who are regulated by the Board of Medicine. Dr. Sanderson, who Dr. Cuban lofted these allegations against, is a practitioner that's related by the Board of Medicine. It's not unreasonable, based on the text of the email, for the governor to conclude that should there be a matter, you know, with Dr. Sanderson before the Board or any of the members of the Wyoming Medical Society leadership, that Dr. Cuban may not be able to be impartial in performing his Board duties if those matters come up. And, Your Honor, that reasonable prediction is important here. As this Court is aware, the Court has drawn a line between whether specific evidence is required or not and sort of looks at timing of the action by the employer, determining whether it falls into the long after category or the soon after category. And this Court has said that long after, if the action is taken long after, you must prove actual disruptions based on the speech. The time frames by which this Court has found an employment action to be long after, six months in the case of the Duda case. But looking at soon after, in the Deshesne case this Court has held, that one month after fell under the soon after category. And looking at the time frame between Dr. Cuban's email and Governor Gordon's removal letter, it was approximately a little bit less than two months. There's no evidence in the record of when Governor Gordon became aware of the email. His letter simply says, I have become aware of this email and I'm taking action now. Wouldn't evidence like that maybe be something you'd need some discovery on in order to do this balancing test? Your Honor, I don't believe so. I think even for purposes of the allegation, I think we can look at the time frame between the email and Governor Gordon's decision, which is approximately less than two months, and analyze it under that consideration just as the District Court did. Looking at that time frame, the District Court said the time frame slightly less than two months is much more similar to the one month time frame that this Court has held to be soon after rather than the six month time frame. Somewhere in that continuum. To me, it just kind of points to this whole issue that Judge Federico has been speaking with you about. Is it really appropriate in a motion to dismiss stage to conduct this balancing test when there could be additional evidence that might be relevant to that test? Your Honor, we do believe that the motion for judgment on the pleadings was appropriate here. And as this Court is aware, it applies the same standard as a motion to dismiss under 12b-6. And so we're looking at the factual allegations in the complaint. But not only did the District Court consider just the temporal length of time between the email and the action, the District Court even went a little bit further and importantly looked at the nature of the employment with Dr. Cuban's position on the Board of Medicine. Unlike a traditional employment where employees are going to work on maybe an eight to five basis or on a regular basis, the Board of Medicine, these are citizen-appointed members on a part-time basis to perform their board duties. In this case, the opportunity for disruption was much more sporadic than in a traditional employer-employee context where the supervisor and employee might be performing their duties on a daily basis or multiple days per week. That's simply not the case here. And so not only did the District Court properly look at the time frame in concluding that it was soon after, but it looked at sort of the nature of the employment, which differs from many of the other cases in which this Court has considered whether the action was long after or soon after. Counsel, let me ask you about that. So how, as a practical matter, do we know what the nature of the employment is with the very limited record that we have? Your Honor, the Board of Medicine is a statutorily created entity, and the requirements to hold meetings are set by statute. And I'm aware of the statutes that bear on that, but as a practical matter, how it actually plays out, what the actual functioning is of the Board and this particular doctor's role on the Board. How do we understand the details of that to the degree that we would need to conduct the balancing? Your Honor, for purposes of long after, soon after, I don't think that was something that was needed to be considered. But I think that is an additional consideration that the District Court put forth based on the statutes and rules governing the Board of Medicine and considered in its analysis. And I think the District Court could have simply looked at the timeframe between the action, the email and the action. But I think the District Court even went further to look at those duties to determine whether Governor Gordon's prediction of disruption was reasonable or not. Your Honor. Can you discuss a public concern analysis?  Your Honor, I think you mentioned it at the outset, but really what we have here is an email that raises a number of issues. And importantly, Governor Gordon's removal action was not based on Dr. Cuban's advocacy for or against a particular piece of legislation. It was based on those comments that were made related to the Wyoming Medical Society leadership and specific practitioners that are governed by the Board of Medicine. Looking at this Court's cases on point, Courts consider public concern very narrowly. And really, the Wyoming Medical Society is not a governmental entity. So there's no allegation or argument that, consistent with this Court's cases, that Dr. Cuban was intending to expose official impropriety. Because those cases all relate to governmental entities. Clearly not, but he is suggesting that he's exposing private associations' impropriety or their internal concerns, I guess, to the legislature who has received, who are public officials who have received a recommendation from this, or a position statement from this private organization. Absolutely, Your Honor. As I understand it. And I believe that communication, as you mentioned earlier, is really airing of a grievance related to Dr. Cuban's dispute of how the internal operations of the Wyoming Medical Society exist. Well, does it make a difference that he's trying to tell the legislature, you need to know this because if you're, you know, the Wyoming Medical Society has a lot of respect, I presume. And he knows that the legislature respects their position, presumably. And so he's saying, you need to know what's behind the scenes before you act, essentially. Your Honor, I don't believe that rises to the level of a public concern based on this Court's precedent. As a matter of law, as a matter of law. Yes, Your Honor. As this Court has said before, matters of public concern are matters of, you know, specific importance to the community. While Dr. Cuban's frustrations with the internal policies and procedures of the Wyoming Medical Society may be important to members of the Wyoming Medical Society, it certainly doesn't rise to the level of a public concern that would be important to the community as a whole. Would it be possible that there could be an allegation, though, of something more significant, fraud or some sort of, I don't know, criminal activity, something that would perhaps make a private association's internal workings a matter of public concern? Your Honor, I have a hard time envisioning a scenario that would rise to the level of public concern when a dispute or a grievance relates solely to the internal workings of a private organization, which Dr. Cuban has recognized. The Wyoming Medical Society is a private organization. There has been no allegation that it's a public organization or any public function of that organization. Your Honor, I see my time is up, and so if there are no further questions, I respectfully request that this Court affirm the District Court's decision and that Governor Gordon did not violate Dr. Cuban's constitutionally protected rights in removal. Thank you. Thank you, Counsel. Rebuttal. Thank you, Your Honor. Just to the Governor's point about this analysis of when this happened, short after or long after, I just want to remind the Court that whether it happened short after or long after does not relieve the burden of the government to show that inefficiency would be created by the speech. And to the point that public concern is important to the community, Chloe's law in the debate at the Wyoming House of Representatives is vital to the community and vital to our representative government. But he was terminated from the board, not because of his comments about Chloe's law, but because of his comments about the association and certain doctors within that. It's our position that he was terminated for speaking on the public concern of Chloe's law. And the Wyoming Medical Society's position on Chloe's law is certainly wrapped up in that debate, but his primary purpose in writing the email to the legislature and the Governor's reasons for firing him, based on the very limited record we have, is that he was fired for speaking on that matter of public concern. So do you concede, though, that if that was the purpose of his letter to reveal the inner workings of the association and his concerns about it, that that would not have been a matter of public concern? If he was writing solely about the Wyoming Medical Society, then we would have a question of whether it is a public concern or not. But, again, in advocating for any position, it's best to address your opponent's position and what they stand for and why their position may be weak or polluted by whatever. And in the course of speaking on a public concern of the law and advocating for that, he addressed the issues with the opponent, who does carry heavy weight with the Wyoming legislature. This is the lobbying body for Wyoming physicians, and they're coming in with all that weight to support this bill. And Dr. Cuban is speaking to that. So with that, in accordance with this Court's decision in Brown v. City of Tulsa, we ask that this Court vacate and remand this matter to the District Court. And I thank this Court for your time. Thank you very much. Thank you both, Counsel, and the case will be submitted. Counsel are excused. Thank you.